**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *IN RE: ABBOTT LABORATORIES EMPLOYEES CREDIT UNION DATA BREACH LITIGATION* | ) ) ) ) ) ) **Lead Case No. 1:24-cv-10930** |
| This Document Relates To: All Actions | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs Laura Bogdan, Marissa Foresta, Lakeena Thompson, Sonia J. Perez, Kelly Monastiriakos, Lloyd Garcia, Karla Garcia, Sharita Medina, and John Williams, individually and on behalf of all others similarly situated, through the undersigned counsel, hereby allege the following against Defendant Abbott Laboratories Employees Credit Union ("ALEC" or "Defendant"). Based upon personal knowledge, information, belief, and investigation of counsel, Plaintiffs specifically allege as follows:

## I. INTRODUCTION

1. Plaintiffs bring this consolidated class action against Defendant for its failure to exercise reasonable care in securing and safeguarding individuals' sensitive personal data. On August 2, 2024, Defendant ALEC experienced a data breach incident ("Security Breach"). Types of personal data exposed reportedly include names, financial account information, and Social Security numbers (collectively "Private Information" or "PI").

2. It has been reported that Defendant learned of the possible Security Breach on September 23, 2024.

3. Based on public reporting, approximately 36,000 individuals' information was affected by the Security Breach.

4. In October of 2024, Plaintiffs received templated notice letters describing the breach of their Private Information.

5. Defendant's security failures enabled the hackers to steal the Private Information of Plaintiffs and Class Members (defined below). These failures put Plaintiffs' and Class Members' Private Information and interests at serious, immediate, and ongoing risk, and caused costs and expenses associated with: the loss of time and productivity to address the effects of the Security Breach, emotional grief from constant monitoring and mitigation of personal banking and credit account activity, mitigate and deal with the actual and future consequences of the Security Breach, including, as appropriate, reviewing records for fraudulent charges, reissuing payment cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, initiating and monitoring credit freezes, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Security Breach.

6. The Security Breach was caused and enabled by Defendant's violation of its obligations to abide by best practices and industry standards concerning the security of consumers' records and Private Information. Defendant failed to comply with security standards and allowed their customers' Private Information to be compromised by cutting corners on security measures that could have prevented or mitigated the Security Breach that occurred.

7. Accordingly, Plaintiffs assert claims for negligence, breach of implied contract, unjust enrichment/quasi-contract, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and seek injunctive relief, monetary damages, and all other relief as authorized in equity or by law.

## II.     JURISDICTION

8.     The Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2) ("CAFA"), because (a) there are 100 or more Class Members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

9.     The Court has personal jurisdiction over Defendant because Defendant's place of business is located within the District and Defendant conducts substantial business in this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant maintains its place of business in this District and therefore reside in this District pursuant to 28 U.S.C. § 1391(c)(2). A substantial part of the events or omissions giving rise to the Class's claims also occurred in this District.

## III.     PARTIES

**Plaintiff Laura Bogdan**

11.     Plaintiff Laura Bogdan is and has at all relevant times been a citizen and resident of Wisconsin.

12.     Ms. Bogdan is a current customer and former employee of ALEC.

13.     Ms. Bogdan provided her Private Information to the Defendant as a condition of employment and of receiving banking and financial services. She provided this information on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect her Private Information. If Ms. Bogdan had known that Defendant would not adequately protect her Private Information, she would not have entrusted Defendant with her Private Information or allowed Defendant to maintain this sensitive Private Information.

14. Ms. Bogdan was employed by ALEC from October 2016 to November 2023.

15. Ms. Bogdan has been using ALEC's services since October 2016.

16. As a result of her employment and in order to obtain financial services from Defendant, Plaintiff was required to provide her Private Information to Defendant.

17. At the time of the Security Breach, ALEC retained Plaintiff Bogdan's Private Information in its system.

18. Plaintiff Bogdan also has joint financial accounts with her elderly father. Consequently, Plaintiff Bogdan and her father's names, email addresses, home address, phone numbers, and Social Security numbers are associated with the above-referenced accounts..

19. Plaintiff Bogdan is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

20. Plaintiff Bogdan became aware of the Security Breach through a notice letter dated October 18, 2024, notifying her that her name, financial account number and Social Security Number were potentially involved. On the same day she became aware of the Security Breach, Plaintiff immediately took steps to protect and vindicate her rights, including by initiating this litigation. As a result of the Security Breach, Plaintiff Bogdan made reasonable efforts to mitigate its impact, including but not limited to: researching and verifying the legitimacy of the Security Breach as well as checking her financial accounts for any indication of fraudulent activity, which may take years to detect. Additionally, Plaintiff Bogdan has initiated credit freezes with all three credit bureaus for both her and her father. To date, Plaintiff Bogdan estimates that she has spent 10-12 hours addressing the consequences of the Security Breach.

- 5 -

Therefore, Plaintiff has spent significant time remedying the breach – valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.

21.     Plaintiff Bogdan suffered actual injury from having her Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

22.     Plaintiff Bogdan has suffered an increase in spam and fraudulent messaging since the Security Breach.

23.     The Security Breach has caused Plaintiff Bogdan to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant did not immediately notify her of the incident. .

24.     As a result of the Security Breach, Plaintiff Bogdan anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms. As a result of the Security Breach, Plaintiff Bogdan is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

25.     Plaintiff Bogdan has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Marissa Foresta**

26. Plaintiff Marissa Foresta has been a citizen and resident of Illinois for the time period relevant to this Security Breach.

27. Ms. Foresta was employed by ALEC from May 2017 to March 2020.

28. Ms. Foresta provided her Private Information to the Defendant as a condition of employment and of receiving banking and financial services. She provided this information on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect her Private Information. If Ms. Foresta had known that Defendant would not adequately protect her Private Information, she would not have entrusted Defendant with her Private Information or allowed Defendant to maintain this sensitive Private Information.

29. Ms. Foresta has been using ALEC's services since May 2017.

30. As a result of her employment and in order to obtain financial services from Defendant, Plaintiff was required to provide her Private Information to Defendant.

31. At the time of the Security Breach, ALEC retained Plaintiff Foresta's Private Information in its system.

32. Plaintiff Foresta is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

33. Plaintiff Foresta became aware of the Security Breach through a notice letter dated October 18, 2024, notifying her that her name, financial account number, and Social Security Number were potentially involved. On the same day she became aware of the Security Breach,

Plaintiff Foresta immediately took steps to protect and vindicate her rights, including by initiating this litigation.

34.     As a result of the Security Breach, Plaintiff Foresta made reasonable efforts to mitigate its impact, including but not limited to: researching and verifying the legitimacy of the Security Breach and checking her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff Foresta has spent significant time remedying the breach – valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. Plaintiff Foresta estimates that she has spent 2 hours dealing with the Security Breach.

35.     Plaintiff Foresta suffered actual injury from having her Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

36.     Plaintiff Foresta has suffered harm, as she was recently notified of her personal information being found on the dark web.

37.     Plaintiff Foresta has suffered an increase in spam and fraudulent messaging since the Security Breach.

38.     The Security Breach has caused Plaintiff Foresta to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant did not immediately notify her of the incident.

39. As a result of the Security Breach, Plaintiff Foresta anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms . As a result of the Security Breach, Plaintiff Foresta is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

40. Plaintiff Foresta has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Lakeena Thompson**

39. Plaintiff Thompson has resided in and has been a citizen of Illinois for the time period relevant to this Security Breach.

40. Plaintiff Thomspon is an account holder of ALEC, requiring her to provide her Private Information to Defendant.

41. Plaintiff Thompson is very careful about sharing her sensitive Private Information. Ms. Thompson stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

42. Plaintiff Thompson became aware of the Security Breach through a notice letter dated October 18, 2024, notifying her that her name, financial account number and Social Security Number were potentially involved. On the same day she became aware of the Security Breach, Plaintiff immediately took steps to protect and vindicate her rights, including by initiating this litigation.

43. As a result of the Security Breach, Ms. Thompson made reasonable efforts to mitigate its impact, including but not limited to: researching and verifying the legitimacy of the

Security Breach as well as checking her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff Thompson has spent significant time remedying the breach – valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

44.     Plaintiff Thompson suffered actual injury from having her Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

45.     Plaintiff Thompson has suffered an increase in spam and fraudulent messaging since the Security Breach.

46.     The Security Breach has caused Plaintiff Thompson to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant did not immediately notify her of the incident.

47.     As a result of the Security Breach, Plaintiff Thompson anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms. As a result of the Security Breach, Plaintiff Thompson is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

48.     Plaintiff Thompson has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Sonia J. Perez**

49.     Plaintiff Perez has resided in and has been a citizen of Illinois for the time period relevant to this Security Breach.

50.     Plaintiff Perez is a former account holder of ALEC, requiring her to provide her Private Information to Defendant.

51.     Plaintiff Perez is very careful about sharing her sensitive Private Information. Ms. Perez stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

52.     Plaintiff Perez became aware of the Security Breach through a notice letter dated October 18, 2024, notifying her that her name, financial account number and Social Security Number were potentially involved.

53.     As a result of the Security Breach, Ms. Perez made reasonable efforts to mitigate its impact, including but not limited to: researching and verifying the legitimacy of the Security Breach as well as checking her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff Perez has spent significant time remedying the breach – valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

54.     Plaintiff Perez suffered actual injury from having her Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to

mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

55. Plaintiff Perez has suffered an increase in spam and fraudulent calls and messaging since the Security Breach.

56. The Security Breach has caused Plaintiff Perez to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant did not immediately notify her of the incident.

57. As a result of the Security Breach, Plaintiff Perez anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms. As a result of the Security Breach, Plaintiff Perez is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

58. Plaintiff Perez has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Kelly Monastiriakos**

59. Plaintiff Kelly Monastiriakos resided in and has been a citizen of Illinois for the time period relevant to this Security Breach.

60. Plaintiff Monastiriakos is an account holder of ALEC, requiring her to provide her Private information to Defendant.

61. Plaintiff Monastiriakos is very careful about sharing her sensitive Private Information. Ms. Monastiriakos stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

62. Plaintiff Monastiriakos became aware of the Security Breach through a notice letter dated October 18, 2024, notifying her that her name, financial account number and Social Security Number were potentially involved. On the same day she became aware of the Security Breach, Plaintiff immediately took steps to protect and vindicate her rights, including by initiating this litigation.

63. As a result of the Security Breach, Ms. Monastiriakos made reasonable efforts to mitigate its impact, including but not limited to: researching and verifying the legitimacy of the Security Breach as well as checking her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff Monastiriakos has spent significant time remedying the breach – valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

64. Plaintiff Monastiriakos suffered actual injury from having her Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

65. Plaintiff Monastiriakos has suffered an increase in spam and fraudulent messaging since the Security Breach.

66. The Security Breach has caused Plaintiff Monastiriakos to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant did not immediately notify her of the incident.

67. As a result of the Security Breach, Plaintiff Monastiriakos anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms. As a result of the Security Breach, Plaintiff Monastiriakos is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

68. Plaintiff Monastiriakos has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Lloyd Garcia**

69. Plaintiff Lloyd Garcia resided in and been a citizen of Illinois for the time period relevant to this Security Breach.

70. Mr. Garcia is an account holder at ALEC, requiring him to provide his Private Information to Defendant.

71. Mr. Garcia provided his Private Information to the Defendant as a condition of receiving banking and financial services. He provided this information on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect his Private Information. If Mr. Garcia had known that Defendant would not adequately protect his Private Information, he would not have entrusted Defendant with his Private Information or allowed Defendant to maintain this sensitive Private Information.

72. Plaintiff Garcia is very careful about sharing his sensitive Private Information. Mr. Garcia stores any documents containing his Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

73. Plaintiff Garcia became aware of the Security Breach through a notice letter dated October 18, 2025, notifying him that his name, financial account number, and Social Security Number were potentially involved. On the same day he became aware of the Security Breach, Plaintiff Garcia immediately took steps to protect and vindicate his rights, including by initiating this litigation.

74. As a result of the Security Breach, Mr. Garcia made reasonable efforts to mitigate its impact, including but not limited to: researching and verifying the legitimacy of the Security Breach as well as checking his financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff Garcia has spent significant time remedying the breach – valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation.

75. Plaintiff Garcia suffered actual injury from having his Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

76. Plaintiff Garcia has suffered an increase in spam and fraudulent messaging since the Security Breach.

77. The Security Breach has caused Plaintiff Garcia to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant did not immediately notify him of the incident.

78.     As a result of the Security Breach, Plaintiff Garcia anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms. As a result of the Security Breach, Plaintiff Garcia is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

79.     Plaintiff Garcia has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Karla Garcia**

80.     Plaintiff Karla Garcia has resided in and been a citizen of Illinois for the time period relevant to this Security Breach.

81.     Mrs. Garcia is an account holder of ALEC, requiring her to provide her Private Information to Defendant.

82.     Mrs. Garcia provided her Private Information to the Defendant as a condition of receiving banking and financial services. She provided this information on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect her Private Information. If Mrs. Garcia had known that Defendant would not adequately protect his Private Information, she would not have entrusted Defendant with her Private Information or allowed Defendant to maintain this sensitive Private Information.

83.     Plaintiff Karla Garcia is very careful about sharing her sensitive Private Information. Mrs. Garcia stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

84. Plaintiff Karla Garcia became aware of the Security Breach through a notice letter dated October 18, 2024, notifying her that her name, financial account number, and Social Security Number were potentially involved. On the same day she became aware of the Security Breach, Plaintiff Karla Garcia immediately took steps to protect and vindicate her rights, including by initiating this litigation.

85. As a result of the Security Breach, Mrs. Garcia made reasonable efforts to mitigate its impact, including but not limited to: researching and verifying the legitimacy of the Security Breach as well as checking her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff Karla Garcia has spent significant time remedying the breach – valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

86. Plaintiff Karla Garcia suffered actual injury from having her Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

87. Plaintiff Karla Garcia has suffered an increase in spam and fraudulent messaging since the Security Breach.

88. The Security Breach has caused Plaintiff Karla Garcia to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant did not immediately notify her of the incident.

- 16 -

89. As a result of the Security Breach, Plaintiff Karla Garcia anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms. As a result of the Security Breach, Plaintiff Karla Garcia is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

90. Plaintiff Karla Thompson has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Sharita Medina**

91. Plaintiff Medina has resided in and been a citizen of Illinois for the time period relevant to this Security Breach.

92. Plaintiff Medina is an account holder at ALEC, requiring her to provide her Private Information to Defendant.

93. Ms. Medina provided her Private Information to the Defendant as a condition of receiving banking and financial services. She provided this information on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect her Private Information. If Ms. Medina had known that Defendant would not adequately protect her Private Information, she would not have entrusted Defendant with her Private Information or allowed Defendant to maintain this sensitive Private Information.

94. Plaintiff Medina is very careful about sharing her sensitive Private Information. Ms. Medina stores any documents containing her Private Information in a safe and secure location.

95. Plaintiff Medina became aware of the Security Breach through a notice letter dated October 18, 2024, notifying her that her name, financial account number, and Social Security Number were potentially involved.

96.     As a result of the Security Breach, Ms. Medina made reasonable efforts to mitigate its impact, including but not limited to: installing and activating a spam call blocker on her phone. Plaintiff Medina has spent significant time remedying the breach – valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

97.     Plaintiff Medina suffered actual injury from having her Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

98.     Plaintiff Medina has suffered a large increase in spam calls since the Security Breach.

99.     As a result of the Security Breach, Plaintiff Medina anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms. As a result of the Security Breach, Plaintiff Medina is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

100.    Plaintiff Medina has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff John Williams**

101.    Plaintiff Williams has resided in and been a citizen of Illinois for the time period relevant to this Security Breach.

102. Plaintiff Williams is an account holder at ALEC, requiring him to provide his Private Information to Defendant.

103. Mr. Williams provided his Private Information to the Defendant as a condition of receiving banking and financial services. He provided this information on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect her Private Information. If Mr. Williams had known that Defendant would not adequately protect his Private Information, he would not have entrusted Defendant with his Private Information or allowed Defendant to maintain this sensitive Private Information.

104. Plaintiff Williams is very careful about sharing his sensitive Private Information. Mr. Williams stores any documents containing his Private Information in a safe and secure location.

105. Plaintiff Williams became aware of the Security Breach through a notice letter dated October 18, 2024, notifying him that his name, financial account number, and Social Security Number were potentially involved.

106. Plaintiff Williams suffered actual injury from having his Personal Information compromised as a result of the Security Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Security Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

107. Plaintiff Williams has suffered an increase in spam and fraudulent calls since the Security Breach.

108.    As a result of the Security Breach, Plaintiff Williams anticipates spending considerable time and money on an ongoing basis to try to mitigate and address corresponding harms. As a result of the Security Breach, Plaintiff Williams is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

109.    Plaintiff Williams has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Defendant ALEC**

110.    Defendant ALEC is an Illinois credit union with its principal place of business at 325 Tri State Parkway, Gurnee, IL 60031. It is a credit union serving approximately 31,000 Members.[1]

111.    Defendant ALEC's privacy policy states that it will protect its members' privacy through "security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We also maintain other physical, electronic and procedural safeguards to protect this information, and we limit access to information to those employees for whom access is appropriate."[2]

## VI.    FACTS

112.    ALEC provides banking and financial products throughout the United States.

---

[1] https://www.alecu.org/Membership/Membership-benefits/about-alec (last accessed June 13, 2025).

[2] https://assets.alecu.org/production/uploads/pdfs/Privacy-Notice-Disclosure.pdf?dm=1702328224&_gl=1*pn1ih7*_gcl_au*NDMxNTY2MTcxLjE3NDk4MzMyMDM.*_ga*ODgxMTc2MzI2LjE3NDk4MzMyMDM.*_ga_7JZM826T58*czE3NDk4MzMyMDMkbzEkZzEkdDE3NDk4MzMzNTEkajYwJGwwJGgxNjQyOTA1ODc4 (last accessed June 13, 2025).

113. On August 2, 2024, ALEC experienced a data security incident that exposed the Private Information of at least 36,044 individuals. Any other data breaches that may have occurred have not been publicly reported.

114. ALEC first learned of unusual activity involving an email account whereby an unauthorized party gained access to the records that contained individuals' Private Information including names, financial information, and Social Security numbers.

115. Defendant has yet to notify impacted parties individually regarding what specific pieces of their Private Information were stolen.

116. The Security Breach occurred because Defendant failed to take reasonable measures to protect the Private Information it collected and stored. Among other things, Defendant failed to implement data security measures designed to prevent this attack, despite repeated public warnings to the financial industry about the risk of cyberattacks and the highly publicized occurrence of many similar attacks in the recent past on financial institutions. For example, Defendant failed to maintain basic security measures, Defendant failed to disclose to Plaintiffs and Class Members the material fact that it did not have adequate data security practices to safeguard customers' personal data, and in fact falsely represented that their security measures were sufficient to protect the Personal Information in their possession.

117. Defendant's failure to provide immediate formal notice of the Security Breach to Plaintiffs and Class Members exacerbated the injuries resulting from the Security Breach.

A. **Defendant Failed to Maintain Reasonable and Adequate Security Measures to Safeguard Consumers' Private Information Despite Previous Data Breaches**

118. Defendant was or should have been aware of the risk of data breaches, especially as data breaches in the banking industry are becoming exponentially more common.

119. Defendant failed to ensure that proper data security safeguards were being implemented throughout the breach period.

120. As Defendant acknowledges, Defendant had obligations created by industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

121. Plaintiffs and Class Members provided their Private Information to ALEC with the reasonable expectation and mutual understanding that ALEC and any of its affiliates would comply with their obligations to keep such information confidential and secure from unauthorized access.

122. Prior to and during the Security Breach, ALEC promised clients that their Private Information would be kept confidential, except for the reasons listed in their Privacy Policy or Plaintiffs so authorized. Hackers taking Plaintiffs' information was not included as an authorized reason.

123. Defendant's failure to provide adequate security measures to safeguard clients' Private Information is especially egregious because Defendant operate in a field which has recently been a frequent target of scammers attempting to fraudulently gain access to individuals' highly confidential Private Information.

124. Defendant has been on notice for years that the financial industry is a prime target for scammers because of the amount of confidential client information maintained. Recently, a number of high-profile data breaches have rocked the financial and banking industries. For instance, major high-profile data breaches have impacted this industry, including the Equifax and Capital One data breaches.

**B.  Damages to Plaintiffs and the Class**

125.  Plaintiffs and the Class have been damaged by the compromise of their Private Information in the Security Breach.

126.  Plaintiffs and the Class have experienced or face a substantial risk of out-of- pocket fraud losses such as, *e.g.*, loss of funds from bank accounts, fraudulent charges on credit cards, targeted advertising, suspicious phones calls, and similar identity theft.

127.  Class Members have or may also incur out-of-pocket costs for protective measures such as credit freezing or payment for phone scam detection.

128.  Plaintiffs and Class Members suffered a "loss of value" of their Private Information when it was acquired by cyber thieves in the Security Breach. Numerous courts have recognized the propriety of "loss of value" damages in data breach cases.

129.  Class Members who paid Defendant for services, or who contracted with other companies that paid Defendant, were also harmed via "benefit of the bargain" damages. Such Members of the Class overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price paid to Defendant was intended to be used by Defendant to fund adequate data security. Defendant did not properly comply with its data security obligations. Thus, Class Members did not get what they were owed.

130.  Members of the Class have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts for misuse.

131.  According to the U.S. Department of Justice Bureau of Justice Statistics, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014.

Among identity theft victims, existing bank or credit accounts were the most common types of misused information.[3]

132.    Similarly, the FTC cautions that identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[4]

133.    Identity thieves can use the victim's Private Information to commit any number of frauds, such as obtaining employment, procuring housing, or even giving false information to police during an arrest. As a result, Plaintiffs and Class Members now face a real and continuing immediate risk of identity theft and other problems associated with the disclosure of their Social Security numbers, and will need to monitor their credit and tax filings for an indefinite duration.

C.    **The Value of Privacy Protections and Private Information**

134.    The fact that Plaintiffs' and Class Members' Private Information was stolen—and might presently be offered for sale to other cyber criminals—demonstrates the monetary value of the Private Information.

135.    At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information:

---

[3] *See* DOJ, *Victims of Identity Theft, 2014* at 1 (Nov. 13, 2017), available at https://bjs.ojp.gov/content/pub/pdf/vit14.pdf

[4] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number[.]" *Id.*

> The use of third-party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[5]

136. Commissioner Swindle's 2001 remarks are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[6]

137. The FTC has also recognized that consumer data is a new (and valuable) form of currency. In an FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit.[7]

138. Recognizing the high value that consumers place on their Private Information, many companies now offer consumers an opportunity to sell this information.[8] The idea is to give consumers more power and control over the type of information that they share and who ultimately receives that information. And, by making the transaction transparent, consumers will make a

---

[5] Tr. at 8:2-8, Federal Trade Commission, *Public Workshop: The Information Marketplace: Merging and Exchanging Consumer Data* (Mar. 13, 2001) available at https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf

[6] *See* Julia Angwin & Emily Steel, *Web's Hot New Commodity: Privacy*, The Wall Street Journal (Feb. 28, 2011), https://www.wsj.com/articles/SB10001424052748703529004576160764037920274

[7] *Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable*, (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf

[8] *Web's Hot New Commodity: Privacy*, *supra* note 6.

profit from their Private Information. This business has created a new market for the sale and purchase of this valuable data.

139. Consumers place a high value not only on their Private Information, but also on the privacy of that data. Researchers have begun to shed light on how much consumers value their data privacy, and the amount is considerable. Indeed, studies confirm that the average direct financial loss for victims of identity theft in 2014 was $1,349.[9]

140. At all relevant times, Defendant was well-aware, or reasonably should have been aware, that the Private Information it maintains is highly sensitive and could be used for wrongful purposes by third parties, such as identity theft and fraud. Defendant should have particularly been aware of these risks given the significant number of data breaches affecting the financial industry.

141. Had Defendant followed industry guidelines and adopted security measures recommended by experts in the field, Defendant would have prevented intrusion into its systems and, ultimately, the theft of its clients' Private Information.

142. Given these facts, any company that conducts business with individuals (or on their behalf) and then compromises the privacy of their' Private Information, has thus deprived the individuals of the full monetary value they are entitled to.

143. Due to damage from Defendant, Plaintiffs and the other Class Members now face a greater risk of continuous identity theft.

---

[9] *See* DOJ, *Victims of Identity Theft, 2014*, *supra* note 3, at 6.

**D.    CLASS ACTION ALLEGATIONS**

144.    Plaintiffs bring all counts, as set forth below, individually and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, on behalf of a Nationwide Class defined as:

> All persons whose Private Information was compromised in the Security Breach, including those who received a notice letter from Defendant concerning the Security Breach (the "Nationwide Class").

145.    Excluded from both the Nationwide Class are Defendant and Defendant's affiliates, parents, subsidiaries, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the Members of their immediate families and judicial staff.

146.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

147.    **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The Members of the Class are so numerous that joinder of all Class Members would be impracticable. On information and belief, the Nationwide Class  number in the tens of thousands.

148.    **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the Class. Such common questions of law or fact include, *inter alia*:

149.    Whether Defendant's data security systems prior to and during the Security Breach complied with applicable data security laws and regulations including, *e.g.,* FTC Act;

150.    Whether Defendant's data security systems prior to and during the Security Breach were consistent with industry standards;

- 27 -

151. Whether Defendant properly implemented its purported security measures to protect Plaintiffs' and the Class's Private Information from unauthorized capture, dissemination, and misuse;

152. Whether Defendant took reasonable measures to determine the extent of the Security Breach after it first learned of same;

153. Whether Defendant disclosed Plaintiffs' and the Class' Private Information in violation of the understanding that the Private Information was being disclosed in confidence and should be maintained;

154. Whether Defendant's conduct constitutes breach of an implied contract;

155. Whether Defendant willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiffs' and the Class' Private Information;

156. Whether Defendant was negligent in failing to properly secure and protect Plaintiffs' and the Class' Private Information;

157. Whether Defendant was unjustly enriched by its actions; and

158. Whether Plaintiffs and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

159. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and other Class Members. Similar or identical common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

- 28 -

160. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, all were similarly injured through Defendant's uniform misconduct described above and were thus all subject to the Security Breach alleged herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

161. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Nationwide Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel.

162. **Injunctive Relief-Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23(b)(2).

163. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and

the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## V. CAUSES OF ACTION

### COUNT I
### Negligence

164. Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

165. Upon Defendant's accepting and storing the Private Information of Plaintiffs and the Class in its computer systems and on its networks, Defendant undertook and owed a duty to Plaintiffs and the Class to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Defendant knew that the Private Information was sensitive and confidential, and should be protected as sensitive and confidential.

166. Defendant owed a duty of care not to subject Plaintiffs' and the Class' Private Information to an unreasonable risk of exposure and theft because Plaintiffs and the Class were foreseeable and probable victims of any inadequate security practices.

167. Defendant owed numerous duties to Plaintiffs and the Class, including the following:

    a) to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting Private Information in its possession;

    b) to protect Private Information using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

c) to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

168. Defendant also breached its duty to Plaintiffs and Class Members to adequately protect and safeguard Private Information by disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information. Furthering their dilatory practices, Defendant failed to provide adequate supervision and oversight of the Private Information with which it was and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, that ultimately permitted a malicious third party to steal and misuse Plaintiffs' and Class Members' Private Information, and intentionally disclose it to others without consent.

169. Defendant knew, or should have known, of the risks inherent in collecting and storing Private Information and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches within the financial industry.

170. Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiffs' and Class Members' Private Information.

171. Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

172. Because Defendant knew that a breach of its systems would damage thousands of its customers, including Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the Private Information contained therein.

173. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its clients, which is recognized by laws

and regulations including, but not limited to, common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

174.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

175.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

176.    Defendant's own conduct also created a foreseeable risk of harm to Plaintiffs and Class Members and their Private Information. Defendant's misconduct included failing to: (1) secure Plaintiffs' and Class Members' Private Information; (2) comply with industry standard security practices; (3) implement adequate system and event monitoring; and (4) implement the systems, policies, and procedures necessary to prevent this type of Security Breach.

177.    Defendant breached its duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information, and by failing to provide timely notice of the Security Breach. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

   b.   Failing to adequately monitor the security of Defendant's networks and systems;

   c.   Allowing unauthorized access to Class Members' Private Information;

d. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

e. Failing to timely notify Class Members about the Security Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages

178. Through Defendant's acts and omissions described in this Complaint, including its failure to provide adequate security and its failure to protect Plaintiffs' and Class Members' Private Information from being foreseeably captured, accessed, disseminated, stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs' and Class Members' Private Information during the time it was within Defendant's possession or control.

179. Defendant's conduct departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the Private Information and failing to provide Plaintiffs and Class Members with timely notice that their sensitive Private Information had been compromised.

180. Neither Plaintiffs nor the other Class Members contributed to the Security Breach and subsequent misuse of their Private Information, as described in this Complaint.

181. As a direct and proximate cause of Defendant's conduct, Plaintiffs and Class Members suffered damages as alleged above.

182. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide lifetime free credit monitoring to all Class Members.

## COUNT II
### Breach of Implied Contract

183.    Plaintiffs fully incorporate by reference paragraphs 1-163, as though fully set forth herein.

184.    Defendant, or other entities working on its behalf, solicited and invited Class Members to provide their Private Information as part of Defendant's regular business practices. When Plaintiffs and Class Members or other entities operating on their behalf made and paid for purchases of Defendant's services and products, they provided their Private Information to Defendant.

185.    In so doing, Plaintiffs and Class Members entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such information and to timely detect any breaches of their Private Information. In entering into such implied contracts, Plaintiffs and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, and were consistent with industry standards.

186.    Class Members reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security. Defendant failed to do so.

187.    Plaintiffs and Class Members would not have provided and entrusted their Private Information with Defendant in the absence of the implied contract between them and Defendant.

188.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

189.    Defendant breached the implied contracts they made with Plaintiffs and Class Members by failing to safeguard and protect their Private Information and by failing to timely detect the Security Breach.

190.     As a direct and proximate result of Defendant's breaches of the implied contracts between Defendant, Plaintiffs, and Class Members, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

191.     Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free lifetime credit monitoring to all Class Members.

**COUNT III**
**Unjust Enrichment/Quasi-Contract**

192.     Plaintiffs fully incorporate by reference paragraphs 1-163, as though fully set forth herein.

193.     Plaintiffs and Class Members conferred monetary benefits upon Defendant. Specifically, they, or other entities operating on their behalf, created accounts with Defendant and provided Defendant with Plaintiffs' and Class Members' Private Information. In exchange, Plaintiffs and Class Members should have received from Defendant the services that were the subject of the transaction and should have been entitled to have Defendant protect their Private Information with adequate data security.

194.     Defendant knew that Plaintiffs and Class Members conferred benefits upon them and accepted, and has accepted or retained that benefit. Defendant profited from this and used Plaintiffs' and Class Members' Private Information for business purposes.

195.     Defendant failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not provide full compensation for the benefits of Plaintiffs' and Class Members' Private Information provided.

196. Defendant acquired Plaintiffs' and Class Members' Private Information through inequitable means, as they failed to disclose the inadequate security practices previously alleged.

197. If Plaintiffs and Class Members knew that Defendant would not secure their Private Information using adequate security, they would not have entrusted Defendant with their Personal Information.

198. Plaintiffs and Class Members have no adequate remedy at law.

199. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon them.

200. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class Members overpaid.

## COUNT IV
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.* ("ICFA")

201. Plaintiffs restate and re-allege paragraphs 1-163 as if fully set forth herein.

202. ALEC offered and continues to offer financial services in the State of Illinois.

203. Plaintiffs and Class Members purchased and received banking or other financial services from ALEC for personal, family, or household purposes.

204. ALEC engaged in unlawful and unfair practices in violation of the ICFA by failing to implement and maintain reasonable security measures to protect and secure its customers' PI in a manner that complied with applicable laws, regulations, and industry standards.

205. ALEC makes explicit statements to its customers that it implements measures to protect their PI, and that their PI will remain private.

206.     ALEC's duties also arise from the Illinois Personal Information Protection Act, 815 ILCS 530/45(a) which requires:

> A data collector that owns or licenses, or maintains or stores but does not own or license, records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure.

815 ILCS 530/45. ALEC violated this duty by failing to implement reasonably secure data security policies.

207.     ALEC further violated the ICFA by failing to notify its current and former customers and employees of the Security Breach in a timely manner, as the Illinois Personal Information Protection Act requires entities that experience a data breach to notify Illinois residents "in the most expedient time possible and without unreasonable delay." 815 ILCS 530/10.

208.     Violation of the Illinois Personal Information Protection Act constitutes an unlawful practice under the ICFA. 815 ILCS 530/20.

209.     Due to the Security Breach, Plaintiffs and Class Members have lost property in the form of their PI. Further, ALEC's failure to adopt reasonable practices in protecting and safeguarding its customers' and employees' Private Information has forced, and will continue to force, Plaintiffs and Class Members to spend time or money to protect against identity theft. Plaintiffs and Class Members now face a substantially increased risk of identity theft, fraud, and other crimes. This harm sufficiently outweighs any justifications or motives for ALEC's practice of collecting and storing PI without appropriate and reasonable safeguards to protect such information in place.

210.     As a result of ALEC's violations of the ICFA, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the

likelihood of identity theft or fraud; (ii) the compromise, unauthorized access, and theft of their PI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PI which remains in ALEC's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.      Declaring that this action is a proper class action, certifying the Nationwide Class as requested herein, designating Plaintiffs as Nationwide Class Representatives, and appointing Class Counsel as requested in Plaintiffs' expected motion for class certification;

B.      Ordering Defendant to pay actual damages to Plaintiffs and the other Class Members;

C.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other Class Members;

D.      Ordering injunctive relief requiring Defendant to, *e.g.*: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free credit monitoring to all Class Members;

E. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and their counsel;

F. Ordering Defendant to pay equitable relief, in the form of disgorgement and restitution, and injunctive relief as may be appropriate;

G. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

H. Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Consolidated Class Action Complaint so triable.

Date: July 14, 2025                                    Respectfully submitted,

By: */s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

Jason S. Rathod
*jrathod@classlawdc.com*
Nicholas A. Migliaccio
*nmigliaccio@classlawdc.com*
**Migliaccio & Rathod LLP**
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
Fax: (202) 800-2730

Ben Barnow (IL Bar No. 0118265)
Anthony L. Parkhill (IL Bar No. 6317680)
Riley W. Prince (IL Bar No. 6339536)
Nicholas W. Blue (IL Bar No. 6343317)
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com
rprince@barnowlaw.com
nblue@barnowlaw.com

*Interim Co-Lead Counsel*

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
ostrow@kolawyers.com

Leigh S. Montgomery (pro hac vice forthcoming)
Texas Bar No. 24052214
**EKSM, LLP**
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455
lmontgomery@eksm.com

Eduard Korsinsky (pro hac vice forthcoming)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
ek@zlk.com

*Additional Plaintiffs' Counsel*